595 S.E.2d 472

**SUMMIT CONTRACTORS, INC., Petitioner,**

v.

**GENERAL HEATING & AIR CONDITIONING, INC., Respondent.**

**No. 25805.**

Supreme Court of South Carolina.

Heard Feb. 18, 2004.

Decided April 19, 2004.

411

Charles E. Carpenter, Jr., and S. Elizabeth Brosnan, all of Richardson, Plowden, Carpenter & Robinson, P.A., of Columbia; and William D. Marvin and Steven L. Smith, both of Kessler, Cohen & Roth, P.C., of Philadelphia, PA, for petitioner.

John L. Choate and Allan Levin, both of Cozen O'Connor, of Atlanta, GA, for respondent.

Justice MOORE.

Petitioner (Contractor) brought this action on behalf of its insurer, Crum & Forster (Insurer),[1] asserting Insurer's right to be subrogated to Contractor's claim against respondent (Subcontractor) for fire damage to a construction site. Subcontractor asserted as a defense the waiver of subrogation clause found in its contract with Contractor. We granted a writ of certiorari to review the Court of Appeals' unpublished opinion holding the waiver of subrogation clause valid. We affirm.

## FACTS

Subcontractor's employee/sub-subcontractor allegedly caused the fire by negligent soldering. For purposes of this appeal, Subcontractor's liability is assumed. Insurer paid Contractor $935,000[2] under its property loss policy. The trial judge granted Subcontractor a directed verdict based on the waiver of subrogation clause and the Court of Appeals affirmed.

---

1. There is no dispute that the insurer is the real party in interest.

2. This is the amount paid after a $1,000 deductible.

## ISSUES

1. Are Schedules A and B of the contract controlling over other form provisions of the contract?
2. Is the contract ambiguous?
3. Is the waiver of subrogation clause ambiguous and against public policy?

## DISCUSSION

### 1. Validity of form provisions

■ In the course of negotiating the contract with Contractor, Subcontractor submitted a standard form contract developed by the American Institute of Architects, hereinafter referred to as the "AIA form." This form contains the waiver of subrogation provision at issue. In response, Contractor submitted Schedule A and Schedule B as additional contract terms. Subcontractor made some handwritten changes to these Schedules before agreeing. The AIA form and Schedules A and B together became the agreement between the parties.

Contractor argues that Schedules A and B of the contract control over the AIA form which includes the waiver of subrogation clause. Contractor relies on provisions in these Schedules that hold Subcontractor liable for damage caused by faulty workmanship and argues these provisions invalidate the waiver of subrogation clause.[3]

The Court of Appeals found the provisions of the Schedules do not override the provisions of the AIA form because these Schedules are themselves essentially boilerplate. We agree. Michael Rodgers, Contractor's vice-president, testified Schedules A and B were Contractor's "standard" agreement form used for subcontracting. Contractor is not relying on any of the handwritten changes made to these Schedules during the parties' negotiations but points to provisions included in the standard form part of the Schedules. These standard form provisions do not control as a matter of law simply because they are not industry-wide forms like the AIA form. *Cf. Riverside Bldg. Supply, Inc. v. Fed. Emergency Management*

---

3. These provisions are discussed in detail in Issue 2.

*Agency,* 723 F.2d 1159 (4th Cir.1983) (typewritten terms inserted in preprinted form reflect more exactly the agreement of the parties).

In any event, as discussed below, the waiver of subrogation clause found in the AIA form and the liability provisions of Schedules A and B are not inconsistent. Even if the provisions of the Schedules were to be given more weight, they would not invalidate the subrogation clause.

### 2. Whether the contract as a whole is ambiguous

■ Contractor contends the provisions of Schedules A and B conflict with the waiver of subrogation clause rendering the contract ambiguous. It argues because the contract is ambiguous, its terms must be determined by the fact-finder and a directed verdict was inappropriate. The Court of Appeals found the contract is not ambiguous and concluded the waiver of subrogation clause is enforceable. We agree.

The relevant provisions of the contract are as follows. Paragraph 13.5 of the AIA form provides:

**13.5 Waivers of Subrogation.** The Contractor and Subcontractor waive all rights against (1) each other ... for damages caused by fire ... to the extent covered by property insurance ... applicable to the Work.... The policies shall provide such waivers of subrogation by endorsement or otherwise. A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged.

Schedule A includes the following provisions:

4. SUBCONTRACTOR acknowledges and agrees that it has the sole responsibility for compliance with all of the requirements of the Occupational Safety and Health Act of 1970 and agrees to indemnify and hold harmless CONTRACTOR against any legal liability or loss which CONTRACTOR may incur due to SUBCONTRACTOR's failure to comply with the above referenced Act.

7. SUBCONTRACTOR will be liable for any actions or damages caused by its material suppliers and sub-

subcontractors. SUBCONTRACTOR will be responsible for damages caused by SUBCONTRACTOR, its suppliers or sub-subcontractors to the work.

32. SUBCONTRACTOR shall be held responsible for all damages to the building or the work of others resulting from his negligence.

33. SUBCONTRACTOR is to maintain all amounts of insurance listed in Specifications for the duration of the project. If no requirement is listed in Specifications, SUBCONTRACTOR is to maintain the amounts of insurance required by law for the State in which the work is being performed.

Schedule B includes the following:

1. Before work commences, the SUBCONTRACTOR shall submit an original insurance certificate indicating General Liability Coverage and Limits and Worker's Compensation Coverage. . . .

5. SUBCONTRACTOR shall be held responsible for all damages to property or the Work of others resulting from his/her Work, including consequential damages resulting therefrom.

6. Where damages to buildings and/or furnishing occur due to faulty Workmanship or faulty materials, said damages will be backcharged to the SUBCONTRACTOR including any consequential damages resulting therefrom.

Contractor contends that Subcontractor's agreement to be "held responsible" for damages and to carry liability insurance conflict with the waiver of subrogation clause. We find no conflict. Reading the contract as a whole, the waiver of subrogation clause provides that subrogation is waived *to the extent damages are covered by property insurance.* Under the provisions of Schedules A and B, Subcontractor remains liable for any excess damages not covered by property insurance. The requirement that Subcontractor carry liability insurance would apply to excess damages and other damages not covered by property insurance.

Since there is no ambiguity, the trial court properly directed a verdict based on the waiver of subrogation clause.

### 3. The waiver of subrogation clause

■ Contractor contends the waiver of subrogation clause is itself ambiguous and should not be enforced. We disagree.

The relevant part of the waiver of subrogation clause provides as follows:

> A waiver of subrogation shall be effective as to a person or entity even though that person or entity would *otherwise have a duty of indemnification,* contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged.

(emphasis added). The Court of Appeals interpreted this language as consistent with the liability language of Schedules A and B. Contractor contends to the contrary that the "otherwise" provision renders the waiver confusing and unenforceable.

We find no internal conflict in the clause when read with another provision of the AIA form which specifically addresses indemnification:

### 4.5   INDEMNIFICATION

4.6.1   To the fullest extent permitted by law, the Subcontractor shall indemnify ... Contractor ... from and against losses ... arising out of or resulting from performance of the Subcontractor's Work ... attributable to ... destruction of tangible property (other than the Work itself). . . .

(parentheses in original). The "otherwise" language included in the waiver of subrogation refers back to this provision regarding indemnification for damage to property *other than the Work itself.* In other words, under the terms of the AIA form, even though Subcontractor must fully indemnify Contractor for damage to the property of others, Contractor waives subrogation for damage to *the construction site* to the extent covered by property insurance. There is no conflict within the waiver of subrogation clause.

■ Contractor further contends it is against public policy to enforce the waiver of subrogation clause because it unconscionably relieves Subcontractor of liability for its negligence. As noted by the Court of Appeals, other courts have upheld

waiver of subrogation clauses because they apply only to property loss, they waive subrogation only to the extent covered by first party insurance, and they merely give effect to the parties' agreement to allocate risk. *See IRMA v. O'Donnell, Wicklund, Pigozzi & Peterson Architects, Inc.*, 295 Ill.App.3d 784, 229 Ill.Dec. 750, 692 N.E.2d 739 (1998); *Viacom Internat'l, Inc. v. Midtown Realty Co.*, 193 A.D.2d 45, 602 N.Y.S.2d 326 (N.Y.1993). We decline to find such a waiver against public policy.

**AFFIRMED.**

TOAL, C.J., WALLER and PLEICONES, JJ., and Acting Justice ALEXANDER S. MACAULAY, concur.