640 S.E.2d 514

**Annie Lee JONES, individually, and as Personal Representative Applicant for the Estate of Katherine Elaine Jones, deceased, and on behalf of her minor children and heirs Khadijah Jones, Keyia Sanders, Robert Canty and Da–Nayia Sailes, Appellant,**

v.

**John or Jane DOE (unknown physician), Spartanburg Regional Medical Center, Respondents.**

No. 4184.

Court of Appeals of South Carolina.

Heard Nov. 7, 2006.
Decided Dec. 18, 2006.
Rehearing Denied Jan. 30, 2007.

Theo W. Mitchell, of Greenville, for Appellant.

Perry D. Boulier, of Spartanburg, for Respondents.

GOOLSBY, J.:

This is a medical malpractice case. Annie Lee Jones (Jones), individually and on behalf of the estate of Katherine Elaine Jones (Katherine), contends the trial court erred in failing to grant her motion for a continuance and in granting summary judgment to the defendants in this action. We affirm.

## FACTS AND PROCEDURAL HISTORY

On November 9, 2001, Katherine was admitted to Spartanburg Regional Medical Center (SRMC) for the birth of her child. The child was delivered by cesarean section the same day. Katherine was discharged on November 12, 2001; however, the child remained under medical care at SRMC. According to a postpartum discharge form that Katherine had signed, she was instructed to return to SRMC on November 19, 2001, for an incision check.

During the early hours of November 17, 2001, Katherine was found dead in her apartment. Based on autopsy results, it was determined Katherine "died as a result of internal hemorrhage secondary to partial dehiscence" of the uterine incision from her cesarean section. The dehiscence of this incision resulted in internal bleeding that caused her death.[1]

On October 31, 2002, Jones, as special administrator of Katherine's estate, filed this wrongful death and survival action, claiming SRMC employees committed medical malpractice resulting in Katherine's death. The lawsuit was filed against SRMC and "John or Jane Doe (unknown physician)" (collectively Defendants).

In her deposition, Jones testified Katherine was in good spirits when she left SRMC and did not complain about any physical problems resulting from the cesarean section. A day or two later, however, Katherine complained to Jones in a telephone conversation that her stomach hurt and her feet were swelling. Although Jones told Katherine to go to the hospital if the pain became severe and even offered to drive her there, Katherine said she would be all right.

Priscilla Jones, Katherine's sister, stated in an affidavit that she visited Katherine almost every day after Katherine returned home from SRMC. According to Priscilla, Katherine complained regularly to her about feeling cold and having swollen feet after the procedure. In addition, Priscilla stated she heard Katherine, during a visit with her newborn child at SRMC, make similar complaints to "attending medical staff," whom Priscilla did not otherwise identify. In her deposition, Priscilla similarly testified she saw Katherine every day from the time she was discharged to the time of her death and the only complaints Katherine had concerned the swelling of her feet. Although Priscilla also testified she was present when Katherine called her doctor to make an appointment, she only heard Katherine say her feet were swollen.

Minnie Montgomery, Katherine's grandmother, stated in her affidavit Katherine had complained to her numerous times about abdominal pain. According to the affidavit, Montgom-

---

1. The term "dehiscence" has been defined as "[a] bursting open, as of a graafian follical or a wound, esp. a surgical abdominal wound." *Taber's Cyclopedic Medical Dictionary* 507 (17th ed.1993).

ery heard Katherine relate she had complained about her abdominal pain to a nurse while visiting her newborn at SRMC the previous day and the nurse said "it was just normal after birth symptoms." Although Montgomery told Katherine to insist on seeing a doctor, Katherine said she would "try to make it until the appointment [on November 19]."

Joel S. Engel, M.D., Jones's expert witness, gave his opinion in an affidavit that "had [Katherine] had post-operative medical attention when complaining of her [severe] abdominal pain . . . identification of the incisional disruption and the finding of the hematoperitoneum would have prevented the untimely death of this woman." He further stated that "[d]ehiscence of a uterine and/or surgical incision is a known and acceptable risk assuming the operative procedure is performed in an accepted manner"[2]; however, in his deposition, he agreed it was a rare occurrence and acknowledged he had never been personally involved in a similar case.

Furthermore, when asked during his deposition to summarize his opinions in this case, Engel replied SRMC's only deviation from the standard of care was its failure to respond in an appropriate manner to Katherine's alleged complaints of severe abdominal pain that were "outside the normal postoperative complaints."[3] Engel further stated he received no records from SRMC suggesting a physician at SRMC had been made aware of any complaints from Katherine regarding abnormal abdominal pain. He further agreed it was appropriate follow-up care to schedule an appointment for a patient who had just had a cesarean section seven days after her discharge.

---

2. Priscilla stated in her affidavit she was present during the surgery and heard one of the doctors performing the cesarean section say "Oh-oh" "in an alarming manner, as though a mistake had been made" and, when she asked if anything was wrong, a physician said, "We'll take care of it." Despite this allegation, there was no attempt to develop the theory that Katherine's death resulted from the surgery itself.

3. Although Engel testified no dictated operative report was present in Katherine's file and stated this omission was "one glaring deficiency in the records," there was no showing that Jones made any attempt to obtain such a report or that the absence of the report was proximately linked to the damages claimed in this lawsuit.

After Engel's deposition on February 14, 2005, Defendants moved for summary judgment. The Spartanburg County Court of Common Pleas scheduled the motion for a hearing on June 6, 2005, at 3:15 p.m.

According to the record on appeal, on June 6, 2005, at 11:14 a.m., the Spartanburg County Clerk of Court filed a motion by Jones's attorney to continue the hearing based on an allegation that Defendants untimely served their memorandum in support of summary judgment and Jones's attorney still had not received a transcript of a deposition. Around 12:42 p.m. that same day, Judge John C. Hayes, a visiting judge presiding at the summary judgment hearing, received a faxed letter from Jones's attorney advising counsel would not be available that afternoon because he had a divorce hearing in McCormick County that morning. When the case was called, it appears no one on Jones's behalf was present. Judge Hayes stated on the record that he called the McCormick County Courthouse and had been informed by the clerk the hearing had concluded "before lunch," and counsel "had left there saying he was heading to Spartanburg." Reasoning counsel had ample time to arrive at the summary judgment hearing, Judge Hayes then allowed Defendants' attorney to present arguments concerning both the requests for a continuance and the summary judgment motion.

On June 9, 2005, Judge Hayes issued an order granting summary judgment to Defendants, finding Jones "has not presented any admissible evidence that Defendants were ever contacted by [Katherine] following her discharge on November 12, 2001 with any complaints of post-operative complications" and concluding that "[a]s Dr. Engel's opinions against Defendants are premised on the contention that the Defendants were negligent in failing to provide prompt and timely follow-up care, [Jones's] claims fail as a matter of law."

Jones moved for reconsideration pursuant to Rules 59 and 60, SCRCP. By order dated June 22, 2005, Judge Hayes denied the motion. Jones then filed this appeal.

### LAW/ANALYSIS

1. We disagree with Jones that Judge Hayes erroneously "assumed the authority" of the chief administrative judge in

denying her motion for a continuance of the summary judgment hearing. The only legal authority Jones has cited to this court in support of this argument is Rule 40(i)(1), SCRCP. Although that rule concerns requests for continuances, it authorizes "the court" to grant such requests "for good and sufficient cause."[4] Furthermore, the letter counsel faxed requesting postponement of the hearing was addressed to Judge Hayes, notwithstanding he was a visiting judge in the circuit.

■ 2. We further find Judge Hayes committed no abuse of discretion in refusing to continue the summary judgment hearing either for the reasons advanced in Jones's formal motion or because of potential scheduling conflicts that were referenced in the subsequent letter that her attorney faxed to the court.[5]

By letter dated May 16, 2005, counsel for Defendants notified Jones's attorney the summary judgment motion would be heard on June 6, 2005, at 3:15 p.m. It was not until the day of the scheduled hearing that Jones filed a formal motion for a continuance, which was followed by the faxed letter from her attorney advising that he had a hearing in another county that morning.

Regarding the scheduling conflict, Judge Hayes issued an order on June 21, 2005, in which he acknowledged he may have been under the misapprehension that Jones's attorney had left the McCormick County Courthouse at noon rather than at 1:00 p.m. Nevertheless, Judge Hayes determined there was still ample time for counsel to drive to Spartanburg for the summary judgment hearing even if he had departed one hour later than originally assumed and a telephone call could have addressed the situation if he had been running late. Judge Hayes noted he based his finding about the driving time

---

4. Rule 40(i)(1), SCRCP. Although paragraph (h) of Rule 40 requires "[t]he Chief Judge for Administrative Purposes, in cooperation with the clerk" to be "responsible for setting all matters on the Nonjury Docket for disposition," the rule does not specify that scheduling changes need approval from the chief administrative judge.

5. See Jackson v. Speed, 326 S.C. 289, 309, 486 S.E.2d 750, 760 (1997) (stating a ruling on a motion for a continuance is within the trial court's sound discretion).

on www.mapquest.com. Jones has not offered anything in her brief on appeal to suggest this source was unreliable.

As to the grounds advanced in Jones's formal motion, we hold neither is of sufficient merit to warrant a determination that Judge Hayes's refusal to continue the hearing amounted to an abuse of discretion. The South Carolina Rules of Civil Procedure do not set a deadline for submitting memoranda of law prepared in conjunction with summary judgment motions. In fact, such memoranda are not required at all. Moreover, the deposition that Jones claimed she needed a transcript for had been taken twenty-four days before the scheduled hearing, giving her ample time to move for a continuance. Accordingly, Judge Hayes did not err in refusing to grant the requested continuance.[6]

3. Turning to the merits of the case, we disagree with Jones's contention that summary judgment was improper.

"Summary judgment is appropriate when it is clear that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."[7] "In reviewing an order of summary judgment, an appellate court applies the same standard as that which the circuit court applied in determining whether to enter the order."[8] "On appeal from an order granting summary judgment, the appellate court will review all ambiguities, conclusions, and infer-

---

6. In her formal motion for a continuance, Jones alleged as good cause for a continuance that SRMC "challenges the affidavit of Plaintiff's witness Minnie Montgomery, who was deposed Friday, May 13, 2005, and whose requested deposition transcript has not been received by Plaintiff, and to provide said transcript to Plaintiff's medical expert as an additional basis for his opinion...." Pursuant to Jones's motion for reconsideration, Judge Hayes issued an order in which he noted he read the deposition at issue "out of interest" and found the "firsthand knowledge" Montgomery claimed to have regarding Katherine's attempt to obtain medical care was actually inadmissible hearsay testimony. Jones does not specifically challenge this finding in her brief. Assuming, then, without deciding that Jones did not receive timely notice that Montgomery's affidavit would be challenged, she failed to make a showing on appeal that Montgomery's deposition would have cured the defects in the earlier statement.

7. *Gadson v. Hembree*, 364 S.C. 316, 320, 613 S.E.2d 533, 535 (2005).

8. *Helms Realty, Inc. v. Gibson–Wall Co.*, 363 S.C. 334, 340, 611 S.E.2d 485, 488 (2005).

ences arising in and from the evidence in a light most favorable to the non-moving party below." [9]

■ A plaintiff alleging medical malpractice must provide evidence of (1) "the generally recognized practices and procedures which would be exercised by competent practitioners in a defendant doctor's field of medicine under the same or similar circumstances," [10] and (2) a departure by the defendant "from the recognized and generally accepted standards, practices and procedures in the manner alleged by the plaintiff." [11] In addition, there must be evidence that the defendant's failure to meet the recognized standard of care was the proximate cause of the plaintiff's alleged injuries and damages.[12]

■ In the present case, Engel opined Defendants departed from the standard of medical care in failing to provide post-operative medical attention to Katherine after she complained of severe abdominal pain. Absent, however, is any *admissible* evidence suggesting that anyone responsible for Katherine's care and treatment, physician or otherwise, was made aware of her abdominal pain.

Here, Priscilla Jones's affidavit and deposition were the only evidence that a witness actually heard Katherine voice any complaints to hospital personnel. As we have recounted earlier in this opinion, Priscilla stated in her affidavit that she heard Katherine tell a nurse that her feet were swollen and she had been feeling cold. Likewise, in her deposition, Priscilla testified she heard Katherine telephone her doctor for an appointment; however, she only recalled Katherine complaining about her swollen feet. In neither instance did Priscilla attest to hearing Katherine tell anyone at SRMC that she was experiencing abdominal pain.

---

9. *Willis v. Wu*, 362 S.C. 146, 150–51, 607 S.E.2d 63, 65 (2004).

10. *Cox v. Lund*, 286 S.C. 410, 414, 334 S.E.2d 116, 118 (1985).

11. *Id.*

12. *David v. McLeod Regional Med. Ctr.*, 367 S.C. 242, 248, 626 S.E.2d 1, 4 (2006).

Although Jones testified she heard about Katherine's abdominal pain from Katherine herself, Jones never stated she was present during any conversations that Katherine may have had with staff members at SRMC. Montgomery's affidavit indicates Montgomery had, at best, hearsay knowledge about Katherine's complaints to medical personnel about her abdominal pain. Finally, as noted in footnote 6 of this opinion, Jones does not specifically take issue with Judge Hayes's finding that any claim by Montgomery in her deposition that she knew Katherine sought medical care for her abdominal pain was actually hearsay testimony.[13]

4. Finally, Jones appears to argue Judge Hayes failed to give due consideration to an undated, unsigned document entitled "Statement of Annie Jones," in which Jones purportedly averred Katherine "said for four days that she had been repeatedly calling the doctor, complaining of constant severe abdominal pain, but the doctor neglected to schedule an appointment to see her until finally an appointment was given for November 19, 2001—however, she died on November 17, 2001." In support of this argument, Jones notes in her brief that Engel acknowledged he reviewed this document, which was provided to him by Jones's attorney. The implication appears to be that, notwithstanding the hearsay characteristics of the statement at issue and the fact that the document itself lacked authentication, the statement and document were admissible as factual evidence because they formed the basis of Engel's opinion. We disagree.

██ Although Jones does not cite any particular rule of evidence in her brief, she apparently relies on Rule 703, SCRE. This rule permits an expert giving an opinion to rely on facts or data "that are not admitted in evidence or even admissible into evidence."[14] The rule, however, does not

---

**13.** *See* Rule 208(b)(1)(B), SCACR ("Ordinarily, no point will be considered which is not set forth in the statement of the issues on appeal."). In any event, we found nothing in Montgomery's deposition indicating she heard Katherine report complaints of abdominal pain to appropriate hospital personnel.

**14.** Rule 703, SCRE notes.

allow for the unqualified admission of hearsay evidence merely because an expert has used it in forming an opinion. Rather, as aptly set forth in one treatise:

> [T]he expert may testify to evidence even though it is inadmissible under the hearsay rule, but allowing the evidence to be received for this purpose does not mean it is admitted for its truth. *It is received only for the limited purpose of informing the jury of the basis of the expert's opinion and therefore does not constitute a true hearsay exception.*[15]

■ Applying this interpretation of Rule 703 to the present case, we hold that, even if Jones is correct that Engel "had information about complaints by [Katherine] to the Hospital or any physician in the unsigned, undated, typewritten 'Statement of Annie Jones,' " the document and the assertion that Katherine "said for four days that she had been repeatedly calling the doctor, complaining of constant abdominal pain" were, at best, admissible only to explain how Engel reached his determination regarding whether there was a breach of a duty in this case. Neither the document nor the statement within it could have been admitted as evidence that someone responsible for Katherine's care and treatment at SRMC was alerted to her complaints of abdominal pain. Absent such evidence, Jones has failed to present a genuine issue of material fact as to whether Defendants deviated from the applicable standard of care.

**AFFIRMED.**

STILWELL and SHORT, JJ., concur.

---

**15.** 2 Kenneth S. Broun, et al., *McCormick on Evidence* § 324, at 418 (2006) (emphasis added); *see also Kim v. Nazarian*, 216 Ill.App.3d 818, 159 Ill.Dec. 758, 576 N.E.2d 427, 433 (1991) ("Rule 703 does not create an exception to the rule against hearsay because the underlying facts or data are admitted not for their truth, but for the limited purpose of explaining the basis of the expert's opinion.").