389 S.C. 504 (2010)
698 S.E.2d 822
Kenneth E. WRIGHT and Bonnie L. Wright, Appellants/Respondents,
v.
HIESTER CONSTRUCTION CO., INC., Respondent/Appellant, and
Dilia and Odin Painting Co., Respondent.
No. 4712.
Court of Appeals of South Carolina.
Heard November 16, 2009.
Decided July 21, 2010.
*509 Bradford N. Martin and Laura W.H. Teer, both of Greenville, for Appellants/Respondents.
Stephen L. Brown, Duke R. Highfield, and Russell G. Hines, all of Charleston, for Respondent.
J.J. Anderson and Eric M. Johnsen, both of Charleston, for Respondent/Appellant.
THOMAS, J.
These cross-appeals arise from an action for damages relating to the destruction of a new home as the result of a fire. The homeowners, Kenneth E. and Bonnie L. Wright sued their contractor, Hiester Construction Company (Hiester), for breach of contract, contractual vicarious liability, and negligence. The Wrights also named Hiester's subcontractor, Respondent Dilia and Odin Painting Company (D & O), as a defendant, alleging causes of action for breach of warranty of workmanlike construction, negligence, and vicarious liability. *510 The case was tried before a jury, which found for the defendants. The Wrights appeal the denial of their motions for judgment notwithstanding the verdict and a new trial. Hiester cross-appeals on the ground that the trial judge should have directed a verdict in its favor instead of submitting the case to the jury. We affirm.

FACTUAL OVERVIEW AND PROCEDURAL HISTORY
In 2001, the Wrights and Hiester executed a contract drafted by Hiester under which Hiester would build a house for the Wrights in a gated community on Dataw Island.
Under the contract, Hiester was to assume "full responsibility for acts, negligence or omissions of all his subcontractors and their employees and for those of all other persons doing work under a contract for him." In addition, Hiester was required to maintain liability insurance to cover workers' compensation and other personal injury claims and "for property damage that may arise out of work under this Contract, whether caused directly or indirectly by Contractor or directly or indirectly by a subcontractor." The contract also required the Wrights to maintain liability insurance and property damage insurance at their own expense "on the work at the site to its full insurance value including interests of Owners, Contractor and subcontractors against fire, vandalism, and other perils ordinarily included in extended coverage." It also provided that both parties would waive "all claims against each other for fire damage" covered by the property damage insurance that the Wrights were to maintain on the construction site.
Hiester began building the home in March 2001 and hired D & O as a subcontractor to stain some woodwork in the house. In September of that year, as construction neared completion, D & O sent three employees, Lizeth Torres, Manuel Garcia, and Oscar Garcia, to perform this task. In the early morning hours of Saturday, September 29, 2001, after the workers had spent several days in the house staining wood, a fire erupted, destroying the house.
The Wrights filed this lawsuit in May 2003. In their complaint, the Wrights claimed D & O's workers ignored well-known safety precautions by throwing used rags soaked with *511 wood stain into a pile in a cardboard box that was left on the floor of the house after the workers left for the day. The Wrights further alleged the improper disposal caused the rags to combust, which in turn caused the fire. They sought damages of $474,000.
Both Hiester and D & O disputed the Wrights' allegations regarding the cause of the fire. In their depositions, both Manuel Garcia and Oscar Garcia claimed they put the rags in the trash in an outside dumpster. They further contended that, regardless of the cause of the fire, (1) the construction contract allocated the risk of fire damage to the Wrights and State Farm, their insurance carrier and (2) the Wrights and State Farm expressly waived any subrogation claim against them in the event State Farm was required to cover the loss.
The trial took place October 31 through November 3, 2005. The jury returned a verdict for Hiester and D & O. The Wrights moved for judgment notwithstanding the verdict or in the alternative for a new trial. The trial judge denied these motions, and the Wrights served their notice of appeal.[1]

ISSUES
I. Did the trial judge err in allowing evidence of insurance to come before the jury?
II. Should the trial have been bifurcated so that issues regarding insurance would have been separately presented to the jury only if the Wrights first received a verdict on either their breach of contract action or their negligence claim?
III. Did the trial judge commit reversible error in failing to give the jury the correct instruction regarding subrogation?
IV. Should liability have been found against Hiester as a matter of law based on (1) admissions by its president during *512 his deposition, (2) written admissions during discovery, and (3) provisions in the contract under which Hiester assumed liability for its subcontractors' actions?
V. Were the Wrights entitled to judgment notwithstanding the verdict or a new trial based on the trial judge's refusal to admit into the evidence (1) the statements of D & O's workers and (2) testimony regarding their statements?
VI. Did the trial judge err in refusing to allow the fire chief to testify about statements allegedly made by D & O employees?
VII. Should the trial judge have allowed parol evidence to show the intent of the parties regarding the interpretation of the contract?
VIII. Were the Wrights entitled to judgment notwithstanding the verdict or a new trial based on the trial judge's failure to find as a matter of law that the waiver clause did not apply to D & O?
IX. Were the Wrights entitled to a judgment notwithstanding the verdict or a new trial based on (1) an improper closing argument by Hiester's attorney, (2) jury charges regarding negative inference and third-party beneficiary law, (3) communications from the trial judge to the jury regarding trial procedure or (4) an improper verdict form?
X. Did the trial judge err in denying the Wrights' motion to prevent an expert witness from testifying?
XI. Did the trial judge err in denying Hiester's motion for a directed verdict?

STANDARD OF REVIEW
The trial judge must deny motions for directed verdict or judgment notwithstanding the verdict "when the evidence yields more than one inference or its inference is in doubt." Steinke v. S.C. Dep't of Labor, Licensing & Regulation, 336 S.C. 373, 386, 520 S.E.2d 142, 148 (1999). An appellate court "will reverse the trial court only when there is no evidence to support the ruling below." Id. An appellate court "will not disturb a trial court's decision granting or denying a new trial unless that decision is wholly unsupported *513 by the evidence or the court's conclusions of law have been controlled by an error of law." Id.

LAW/ANALYSIS

I. Evidence of insurance
Before the testimony began, the Wrights unsuccessfully moved in limine to exclude references to insurance. Citing Landry v. Hilton Head Plantation Property Owners Association, 317 S.C. 200, 452 S.E.2d 619 (Ct.App.1994), the Wrights argued that the availability of insurance was irrelevant for purposes of determining liability on their causes of action grounded in contract and negligence. On appeal, the Wrights contend the denial of their motion was error because the introduction of evidence of insurance provides an "unfair advantage due to the inherent prejudice against insurance companies."[2] The Wrights further argue the admission of evidence of insurance and subrogation violated the collateral source rule.
In response, Hiester and D & O argue (1) the Wrights, in failing to object to the introduction of this evidence at trial, failed to preserve this issue for review and (2) this evidence was admissible because evidence of insurance in this case was not for the purpose of proving liability.
In a supplementary response to questions from this court during oral argument, counsel for the Wrights admitted the collateral source rule was not expressly raised during the trial, but further asserted the rule was "implied" in their objections to the reference to property insurance coverage. The Wrights, then, did not lay a proper foundation for this Court to address the issue of collateral estoppel. The trial judge's ruling was only "in reference to the insurance" and did not address the specific policy concern behind the collateral source rule. See Wilder Corp. v. Wilke, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) (stating the familiar rule that "an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge" and further noting that "an objection must be sufficiently specific to *514 inform the trial court of the point being urged by the objector"); Citizens & S. Nat'l Bank of S.C. v. Gregory, 320 S.C. 90, 92, 463 S.E.2d 317, 318 (1995) ("The collateral source rule provides that compensation received by an injured party from a source wholly independent of the wrongdoer will not reduce the damages owed by the wrongdoer.") (emphasis added).
As to the error preservation concern raised by Hiester and D & O, we hold the Wrights' failure to object to the introduction of the disputed evidence during the trial does not prevent this Court from considering the issue on appeal. The defendants referenced the issue of insurance in their opening statements, which appeared to have immediately followed argument on the pre-trial motions, and we do not fault the Wrights for addressing the issue themselves in an effort to mitigate the effect of the evidence. Cf. State v. Forrester, 343 S.C. 637, 642, 541 S.E.2d 837, 840 (2001) ("[W]here a judge makes a ruling on the admission of evidence on the record immediately prior to the introduction of the evidence in question, the aggrieved party does not need to renew the objection.").
Nevertheless, we hold the trial judge acted within his discretion in admitting the disputed evidence. In determining a party's culpability, Rule 411, SCRE, excludes evidence of liability insurance, but does not expressly address the admissibility of evidence concerning other types of insurance. See Rule 411, SCRE ("Evidence that a person was or was not insured against liability is not admissible upon the issue of whether the person acted negligently or otherwise wrongfully.") (emphasis added).
We recognize the Wrights were contractually obligated to carry liability insurance as well as property damage insurance; however, no one contends they acted negligently or otherwise wrongfully. The focus of the controversy here, then, is whether the trial judge should have excluded evidence of the Wrights' property damage insurance. Because this evidence is not expressly excluded by Rule 411, "we must determine whether the probative value of the evidence is substantially outweighed by the prejudicial effect and potential for confusing the jury." Yoho v. Thompson, 345 S.C. 361, 365, 548 S.E.2d 584, 586 (2001). Relevant evidence may be excluded "if *515 its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Rule 403, SCRE (emphasis added).
In their complaint, the Wrights included causes of action arising from their contract with Hiester, a contract that specifically contained a waiver of subrogation clause and a requirement that the Wrights maintain property damage insurance on the premises during construction. The effect of these contractual provisions, which defendants asserted absolved them of responsibility for the fire irrespective of whether they were to blame for it, was relevant to the issue of liability. Moreover, the Wrights did not provide any other explanationeither at trial or in their appellants' briefas to why evidence of insurance was more prejudicial than probative given that this lawsuit included causes of action for breach of contract and a defense was asserted based on insurance provisions included in the contract. The jury was made aware that Hiester was also contractually obligated to maintain insurance; therefore, any belief on the part of the jury that "deep pockets" were involved in this lawsuit could have applied as easily to Hiester and D & O as to the Wrights. We therefore cannot say the trial judge abused his discretion in refusing to exclude evidence of insurance. See Gamble v. Int'l Paper Realty Corp. of S.C., 323 S.C. 367, 373, 474 S.E.2d 438, 441 (1996) ("The admission or exclusion of evidence is a matter within the sound discretion of the trial court and absent clear abuse, will not be disturbed on appeal.").

II. Bifurcation
At the beginning of the trial, the Wrights also moved for bifurcation, suggesting that the jury first decide only the issue of liability. The Wrights requested that evidence regarding insurance be presented to the same jury only if the jury found the defendants were liable. The trial judge denied the motion, stating "it may very well come down to a point in the case that it becomes a matter of law as to the interpretation of the contract, but we're not there now." Assuming without deciding the Wrights are correct that the insurance *516 issues could have been separately presented to the jury, we nevertheless uphold the denial of their motion for bifurcation.
A trial court "may order a separate trial ... of any separate issue ... always preserving inviolate the right of trial by jury...." Rule 42(b), SCRCP (emphasis added). "Trial judges have discretion as to whether to bifurcate a trial." Durham v. Vinson, 360 S.C. 639, 644 n. 2, 602 S.E.2d 760, 763 n. 2 (2004). "A trial should be bifurcated only if the issues are so distinct that trial of each alone would not result in injustice." Creighton v. Coligny Plaza Ltd. P'ship, 334 S.C. 96, 108, 512 S.E.2d 510, 516 (Ct.App.1998).
Here, Hiester raised the issue of the waiver of subrogation as a defense to the lawsuit. Moreover, although the Wrights cite authority regarding "inherent prejudice against insurance companies,"[3] they have not asserted that such prejudice cannot be corrected through curative instructions or other means or that the alleged prejudice outweighed the probative value of the information, particularly as that information relates to the parties' contractual obligations. As we have noted in the preceding section, the contract required Hiester as well as the Wrights to maintain insurance; therefore, any inherent prejudice on the part of the jurors against insurers could have prejudiced the defendants as well as the Wrights.

III. Instructions regarding subrogation
The Wrights next allege the trial court incorrectly explained the concept of subrogation to the jury. This issue arose when the jury, during deliberations, submitted nine written questions, two of which are of concern in this appeal. In question number three, the jury inquired: "Can we find that the Plaintiffs are owed money based on negligence but w/out proximate cause[?]" In question number nine, the jury asked: "if the answer to our question # 3 is yes can State Farm [the Wrights' insurer] sue Hiester or Zurich [Hiester's insurer] later? Or can State Farm ask the Wrights for their money back?"
The trial judge answered each question in order. Regarding question number three, he answered: "No. There has to *517 be proximate cause of the negligent proximately cause [sic] the damages and you have to find that as I further instructed you." As to question number nine, the trial judge gave the following answer:
Number nine, if the answer to our question[ ] number three which was the one [dealing with] proximate cause is, yes, can State Farm sue Hiester or Zurich later or can State Farm ask the Wrights for their money back. You said if the answer was, yes, well obviously the answer was no, but I'm glad to answer that if you like. I'll read it again. If the answer to our question of can State Farm sue Hiester or Zurich later? The answer to that's no. This is the whole ball of wax all of the cases. And also the second part of that is or can State Farm ask the Wrights for their money back? The answer to that is no. So if I understand, y'all going back and discuss a little bit.
After the jury returned to the jury room, counsel for the Wrights placed on record a "suggestion" that because the jury was under the mistaken belief that if the jury awarded the Wrights a verdict, this would result in a double recovery that the judge issue a curative instruction "to let [the jury] know that under subrogation the verdict would be split between State Farm and Mr. Wright." The trial judge declined to follow the suggestion, stating he had answered the questions and it would be wrong to speculate as to what the jury intended to ask beyond the question they submitted.
We affirm the trial judge's rejection of the Wrights' request to advise the jury that any recovery would be split between the Wrights and their insurer. Having answered correctly that the Wrights could not recover if they proved only negligence and not probable cause on the part of the defendants, the trial judge answered question number nine in the negative based on his determination that if the Wrights did not prevail, any attempt by their insurer to recoup its lossesfrom the Wrights or anyone elsewould fail as well.
Furthermore, as to whether the trial judge answered correctly the jury's question regarding State Farm's right to recover from its own insured, the adverse party, or the adverse party's insurance carrier, we find no reversible error based on the record before us. "A charge must be construed *518 and considered as a whole before an assignment of prejudicial error will lie to that discrete portion complained of." Waldrup v. Metro. Life Ins. Co., 274 S.C. 344, 346, 263 S.E.2d 652, 654 (1980). The portions of the record submitted in this appeal do not include the general charge to the jury; therefore, we are unable to determine whether the trial judge's answer to the jury's question concerning subrogation, when considered in conjunction with the original instructions to the jury, was misleading.

IV. Liability against Hiester as a matter of law
The Wrights next contend that Hiester should have been found liable as a matter of law because of (1) admissions by Steve Hiester, the president of Hiester, to the effect that D & O caused the fire, (2) written admissions by Hiester Construction during discovery that the fire was caused by Hiester's subcontractors' leaving a box of oily rags in one of the rooms, and (3) provisions in the contract suggesting that Hiester was to be responsible for the acts of its subcontractors. We disagree.[4]
During his deposition, Steve Hiester acknowledged that after speaking with the fire investigators, his opinion was that oil-soaked rags probably spontaneously combusted and caused the fire. We agree with the trial judge that this opinion, which was based largely if not solely on Steve Hiester's conversation with the fire investigator, is not sufficient to settle the issue of liability against Hiester as a matter of law. See Lytle v. Reagan, 256 S.C. 269, 274, 182 S.E.2d 302, 305 (1971) (stating that when a party's testimony is "adverse to himself" and "consists mainly of estimates, opinions and conclusions, rather than actual facts within his knowledge, such is not conclusive upon him when there is other evidence in the record tending *519 to prove that such estimates, opinions and conclusions on his part are not in accord with the true facts").
The written admission during discovery was in response to interrogatories, rather than a request to admit. As such, it was correctly construed by the trial judge "as seeking current information as of the time the question is asked and answered." Baughman v. Am. Tel. & Tel. Co., 306 S.C. 101, 108, 410 S.E.2d 537, 541 (1991); see also Rule 33, SCRCP (concerning interrogatories to parties); Rule 36(b), SCRCP (concerning requests for admission and stating "[a]ny matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission").
The Wrights further contend the admissions made on behalf of Hiester either by Steve Hiester or Hiester's counsel amount to judicial admissions that estop Hiester from denying liability for the fire. We reject this argument. "Judicial estoppel comes into play when the court is forced to take a position based on a factual assertion." Hawkins v. Bruno Yacht Sales, Inc., 353 S.C. 31, 43, 577 S.E.2d 202, 208 (2003). In the present case, no court has taken a prior position regarding the cause of the fire; therefore, judicial estoppel is not applicable.
The Wrights also maintain the contract required Hiester to assume liability for its subcontractors' actions. In conjunction with this argument, they also assert any waiver of Hiester's liability applies only to "faultless occurrences." We agree, however, with Hiester and D & O that the provisions of the contract at issue are tantamount to an enforceable waiver of subrogation rights. See Summit Contractors v. Gen. Heating & Air Conditioning, 358 S.C. 410, 417, 595 S.E.2d 472, 476 (2004) (noting waiver of subrogation clauses have been upheld "because they apply only to property loss, they waive subrogation only to the extent covered by first party insurance, and they merely give effect to the parties' agreement to allocate risk").
Finally, the Wrights contend that because neither Hiester nor D & O objected to the damages they presented, the amount of their damages was established as a matter of law. We need not address this issue in view of our disposition of the other issues on appeal. See InMed Diagnostic Servs. v. *520 MedQuest Assocs., 358 S.C. 270, 279, 594 S.E.2d 552, 556-57 (Ct.App.2004) (declining to address issues in the appeal concerning damages because the Court also determined the plaintiff's claim was barred as a matter of law).

V. Statements of D & O workers
The Wrights next contend the trial judge erred in refusing to admit transcripts of recorded statements from D & O employees or to allow any witness to testify as to conversations with the workers through their interpreter.[5] The Wrights argue the exclusion of this evidence was an abuse of discretion, contending the statements were either admissions, statements against interest, or otherwise admissible for impeachment purposes. They further contend the exclusion of the statements as hearsay was improper and any bias of the interpreter, who was related to a principal of D & O, would have been toward D & O. We disagree.
First, the statements, both oral and written, would not have been admissible as statements against interest because there was no showing that either the interpreter or the D & O workers were unavailable as witnesses. See Rule 804(b)(3), SCRE (recognizing a statement against interest as an exception to the hearsay rule and providing that such evidence is not excluded by the rule "if the declarant is unavailable as a witness").
Second, the South Carolina Rules of Evidence contemplate that use of a prior inconsistent statement for impeachment purposes is permitted only when the proponent is seeking to impeach a declarant who has testified at trial inconsistently with the prior statement. See Rule 613(b), SCRE (concerning extrinsic evidence of prior inconsistent statements of witnesses). Here, the two D & O employees whose statements the Wrights attempted to introduce were not called as witnesses; therefore, we fail to see how these statements could have been admitted for impeachment purposes.
*521 The question of whether the statements could have been admitted as admissions under Rule 801(d)(2)(D), SCRE, presents a more difficult issue.[6] We agree with the Wrights that the translations were "in the field" and therefore not necessarily subject to rules applying to interpreters who translate in-court testimony. Here, however, the trial judge was uncertain as to whether the translations were accurate, irrespective of whether the interpreter, who did not testify at trial, was biased, and we cannot fault him for his concern.
On appeal, the Wrights cite authority from other jurisdictions to support their argument that statements translated by an unofficial interpreter did not create double hearsay. Aside from the fact that none of the cases are binding on this court, we believe each of them is distinguishable from the present appeal,[7] and none of them gives reason to hold the trial judge's *522 exclusion of these translated statements amounted to reversible error. As the trial judge observed, his reservation was not that the interpreter lacked formal credentials; rather, he was concerned that the individuals whose statements were being translated did not have sufficient command of English to confirm that the translation was correct and that there were no other safeguards to verify its accuracy. See Clifford S. Fishman, Recordings, Transcripts, and Translations as Evidence, 81 Wash. L.Rev. 473, 503-04 (2006) (suggesting "at a bare minimum" that a party offering a translated conversation establish that the "translation witness" "has sufficient proficiency in each language to be able to understand, and be understood by, others who speak or write in each").[8]
We therefore hold the trial judge did not abuse his discretion in refusing to admit either the written statements of the D & O employees or in refusing to allow testimony from other witnesses as to what they said. See Pike v. S.C. Dep't of Transp., 343 S.C. 224, 234, 540 S.E.2d 87, 92 (2000) ("It is well settled that the admission and rejection of testimony is largely within the trial court's sound discretion, the exercise of which will not be disturbed on appeal absent an abuse of that discretion.").

VI. Admission of testimony from the fire chief concerning statements allegedly made by D & O employees
The Wrights further maintain that the statements made by the painters through their interpreter, though arguably inadmissible hearsay, should have been admitted through the testimony of Fire Chief Clayton Ellis. The Wrights further contend Ellis should have been permitted to testify as an expert as well as a fact witness. We disagree.
Initially, the trial judge qualified Ellis, who had investigated the fire scene, as a cause and origin expert. Later, however, the trial judge restricted Ellis's testimony to his personal knowledge and would not allow him to testify as to what D & O employees told him through their translator or to give his opinion about the cause of the fire.
*523 Rule 703, SCRE, allows an expert giving an opinion to rely on facts or data that are not admitted in evidence or even admissible into evidence. Jones v. Doe, 372 S.C. 53, 62, 640 S.E.2d 514, 519 (Ct.App.2006). "The rule, however, does not allow for the unqualified admission of hearsay evidence merely because an expert has used it in forming an opinion." Id. at 62-63, 640 S.E.2d at 519. Even if, then, the Wrights are correct that Ellis should have been qualified as an expert witness, his testimony regarding what D & O employees told him would have been admissible "`for the limited purpose of informing the jury of the basis of the expert's opinion.'" Id. at 63, 640 S.E.2d at 519 (quoting 2 Kenneth S. Broun, et al., McCormick on Evidence § 324, at 418 (2006)).
We further find no abuse of discretion in the trial judge's ultimate refusal to allow Ellis to testify as an expert. According to the record, the trial judge tentatively qualified Ellis as an expert in "fire and origin"; however, this qualification was with the proviso that Ellis's investigation was adequate and that he reached a definitive conclusion about the cause of the fire. Based on his perception that Ellis did not do an adequately thorough investigation, the trial judge stated Ellis did not have a sufficient basis to give an expert opinion as to the cause of the fire. The record supports this finding. Out of the jury's presence, Ellis testified that he could conclude only that the fire needed to be investigated and he had only a "very strong suspicion" but did not try to come up with a definitive cause. We therefore uphold the trial judge's decision to restrict Ellis's testimony to what he actually observed. See State v. White, 382 S.C. 265, 274, 676 S.E.2d 684, 689 (2009) (recognizing trial courts "have a gatekeeping role" concerning all expert testimony, whether the subject of expertise is scientific or nonscientific and requiring the court to "assess the threshold foundational requirements of qualifications and reliability and further find that the proposed evidence will assist the trier of fact"); Fields v. J. Haynes Waters Builders, Inc., 376 S.C. 545, 555, 658 S.E.2d 80, 85 (2008) ("The qualification of a witness as an expert is a matter largely within the trial court's discretion and will not be reversed absent an abuse of that discretion.").

*524 VII. Parol evidence
The Wrights contend the trial judge erred in refusing to allow either them or Steve Hiester to testify about their respective intents regarding the contract. We find no reversible error. The Wrights cross-examined Steve Hiester about his intent with regard to the contract and presented testimony during their case-in-chief about their own intent; therefore, even if the trial judge's ruling was incorrect, it ultimately did not prejudice them. See Fields v. Reg'l Med. Ctr. Orangeburg, 363 S.C. 19, 35, 609 S.E.2d 506, 514 (2005) (affirming a verdict for the defendant based in part on the determination that the plaintiff failed to show prejudice from an erroneous evidentiary ruling).

VIII. Application of the waiver of subrogation clause to D & O
The Wrights also argue that any waiver of subrogation did not apply as a matter of law to D & O. We disagree. A hotly disputed issue in the trial was whether D & O workers properly disposed of the used rags before they left the job site. If the jury believed the Wrights did not meet their burden to show negligence on the part of D & O, this would support a finding that D & O was not liable. See Cash v. Kim, 288 S.C. 292, 296, 342 S.E.2d 61, 63 (Ct.App.1986) ("Where a jury returns a general verdict involving two or more issues and its verdict is supported as to at least one issue, the verdict will not be set aside.").

IX. Judgment notwithstanding the verdict or new trial based on improper closing argument, jury instructions, trial procedure, and verdict form

A. Closing argument
The Wrights contend on appeal that Hiester's attorney improperly stated during closing argument that the jury could draw a negative inference against the Wrights because they had subpoenaed an expert witness but did not call him to testify. The Wrights, however, did not make a timely objection to this allegedly improper statement; therefore, this issue is not preserved for appeal. See State v. Sullivan, 310 S.C. 311, 314, 426 S.E.2d 766, 768 (1993) ("To preserve an issue for *525 appellate review, an appellant must object at his first opportunity.").

B. Jury instructions
The Wrights further argue the trial court should have granted their request to charge the jury that it could draw a negative inference from D & O's failure to call any witnesses at trial. They emphasize that D & O's failure to call the employees working at the job site before the fire occurred could have led to such an inference. We disagree. As the Wrights themselves stated in their brief: "A negative inference charge informs the jury that, in the absence of explanation, the failure or refusal of a party to produce a witness may create an adverse inference, where such is within the party's power to produce, is not equally accessible to his opponent, and is such as he would naturally produce if the witness were favorable to him."[9] (emphasis added). In the present case, the trial judge noted among the reasons for denying the requested instruction the absence of any circumstance suggesting the Wrights themselves could not have called the particular witnesses whose absences they sought to emphasize, and the Wrights do not challenge this finding on appeal.
The Wrights also maintain the jury was improperly charged on third-party beneficiary law, which they contend on appeal was inapplicable because it is an equitable remedy. At trial, however, they argued only that the contractor had to make a written request for a waiver of subrogation regarding the subcontractor. We therefore hold this argument was not properly preserved for appeal. See Gurganious v. City of Beaufort, 317 S.C. 481, 488, 454 S.E.2d 912, 916 (Ct.App.1995) ("It is well settled that one cannot present and try his case on one theory and then change his theory on appeal.").

C. Trial procedure
Regarding trial procedure, the Wrights allege the trial judge erred when, in response to the jury's request to rehear certain testimony, he informed the jury that it would take three days for the testimony to be re-read to them. We find *526 no error. As the judge remarked when the Wrights objected to the statement, he did not refuse the request and merely advised the jury to be "judicious in deciding what testimony they wanted to hear" because replaying the entire proceedings would take three days. We find nothing to indicate that the trial judge, in communicating this advisory to the jury, abused his discretion or that the remarks prejudiced the Wrights. See State v. Gregory, 198 S.C. 98, 103, 16 S.E.2d 532, 534 (1941) (stating the conduct of a trial is largely within the sound discretion of the trial judge, whose exercise of such discretion will not be disturbed on appeal absent a showing of "an abuse of discretion, a commission of legal error in its exercise, and that the rights of the appellant have been thereby prejudiced").

D. Verdict form
The verdict form gave the jury three options regarding liability: (1) it could find for the Wrights against both Hiester and D & O; (2) it could find for the Wrights against D & O only; and (3) it could find for both defendants. The verdict form had a fourth option allowing the jury to find for the Wrights against Hiester; however, that option was crossed out before the form was given to the jury to complete.
The Wrights contend the form prevented the jury from finding that only Hiester was liable, which in turn improperly encouraged the jury to exonerate both Hiester and D & O. As support for this position, they maintain the jury could have found Hiester solely responsible for the fire based on a breach of its duty to remove waste and rubbish from the job site. During the proceedings, however, the Wrights conceded that Hiester's liability was contingent on a finding that D & O was negligent. Under these circumstances, we would hold the trial judge did not abuse his discretion in denying the Wrights' request to include the option that the jury could find "strictly against the contractor." See S.C. Dep't of Transp. v. First Carolina Corp. of S.C., 372 S.C. 295, 300, 641 S.E.2d 903, 906 (2007) ("The trial judge has the discretion to determine how a case is submitted to a jury.").

*527 X. Expert witness
Based on the initial representation that Hiester's expert witness took a view that was consistent with the Wrights' position regarding the cause of the fire, the Wrights elected not to depose this witness and placed him under subpoena. On the eve of the trial, however, the Wrights learned the witness had changed his opinion and now believed the cause of the fire was undetermined. The Wrights then unsuccessfully moved at the start of the trial that the defendants not be allowed to call this particular witness, maintaining that his testimony would result in unfair prejudice. The Wrights also contend they were entitled to a continuance to depose the witness based on his change of position. The expert, however, did not testify at all in the case; therefore, the Wrights were not prejudiced by either the refusal to continue the case or the decision not to prevent the defense from calling the witness. State v. Mitchell, 286 S.C. 572, 573, 336 S.E.2d 150, 151 (1985) ("[R]eversal is not required unless appellant was prejudiced by the error.").
The Wrights further argue on appeal that Hiester's attorney improperly stated during closing argument that the jury could draw a negative inference against them because of their decision not to present this witness at trial. As we have previously noted, the Wrights did not make a timely objection to this statement; therefore, this issue is not preserved for appeal. See Webb v. CSX Transp., Inc., 364 S.C. 639, 655, 615 S.E.2d 440, 449 (2005) (holding a party waived its right to complain about an issue on appeal because its objection was untimely).

XI. Hiester's directed verdict motion
Based on our disposition of the Wrights' appeal, we do not find it necessary to address Hiester's cross-appeal, which concerns the denial of its directed verdict motion. See Futch v. McAllister Towing of Georgetown, Inc., 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (stating an appellate court need not address remaining issues when a decision on a prior issue is dispositive).

*528 CONCLUSION
As to the Wrights' appeal, we find no reversible error on the part of the trial judge warranting either a judgment notwithstanding the verdict or a new trial. Because Hiester prevailed at trial, we decline to address its argument that it should have received a directed verdict.
AFFIRMED.
SHORT and KONDUROS, JJ., concur.
NOTES
[1] The Wrights' appeal of this matter first came before this court in 2008. In an unpublished opinion, this court affirmed the trial judge on the ground that the record on appeal failed to show the Wrights timely moved for a new trial. Wright v. Hiester Constr. Co., Op. No. 2008-UP-151 (S.C. Ct.App. filed March 10, 2008). The South Carolina Supreme Court reversed, noting the respondents "concede petitioners' motion was timely made" and remanded the matter to this Court for consideration of the issues on appeal. Op. No. 2009-MO-035 (S.C. Sup.Ct. filed June 29, 2009).
[2] The quoted language appears in Edwards, Inc. v. Arlen Realty & Development Corp., 466 F.Supp. 505, 514 (D.S.C.1978).
[3] See Edwards, 466 F.Supp. at 513.
[4] As noted in D & O's brief, the Wrights, in conjunction with this argument also allege the trial court erred in not admitting certain statements made by Steve Hiester during his deposition. Assuming without deciding that this argument was adequately presented on appeal, we agree with the trial judge that the statements were cumulative to other evidence. See S.C. Dep't of Highways & Pub. Transp. v. Galbreath, 315 S.C. 82, 86, 431 S.E.2d 625, 628 (Ct.App.1993) ("Even if the trial court erred in excluding evidence, there is no reversible error where the testimony would have been cumulative.").
[5] The statements at issue were allegedly made during an interview with Phil Brooks, an employee of State Farm, who testified as a fire and origin expert for the Wrights, and an earlier interview with the fire chief, whose testimony is discussed in the following section.
[6] Rule 801(d)(2)(D) of the South Carolina Rules of Evidence provides that "a statement by [a] party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship" is not hearsay.
[7] In their primary brief, the Wrights cite U.S. v. Ermichine, 2002 WL 869825 (S.D.N.Y. May 3, 2002), an unpublished opinion in which the court rejected the appellant's contention that the translations at issue were suspect because the translators lacked formal training in English. The court noted, among other things, the statements, as translated, were corroborated by the actions that followed the conversations during which the statements were allegedly made. Id. at *2. They also cite U.S. v. Dimas, 418 F.Supp.2d 737 (W.D.Pa.2005), in which a government agent was deemed qualified to testify to a sworn statement that was translated from Spanish to English by an interpreter who did not testify; however, the court also noted the agent, although not fluent in Spanish, had "moderate Spanish language proficiency" that was sufficient to establish the reliability of the statement. Id. at 747. In their reply brief, the Wrights cite three cases, each of which can be distinguished from the present case. In U.S. v. Stafford, 143 Fed.Appx. 531 (4th Cir.2005), the defendant failed to object at trial to the certain translations, and the court upheld their admission into evidence, stating these "did not create double hearsay, as an unofficial interpreter is no more than a language conduit." Id. at 533. The court's holding was based on its determination that the "plain error" rule did not apply. Id. at 533-34. In the second case cited by the Wrights in their reply brief, DCS Sanitation Management v. Occupational Safety & Health Review Commission, 82 F.3d 812 (8th Cir.1996), the interpreter was available to testify at the hearing. Id. at 816. Finally, in Alimi v. Gonzales, 489 F.3d 829 (7th Cir.2007), although the court upheld the admission of a translated statement despite the interpreter's absence at the hearing and lack of formal credentials, the party seeking to exclude the statement gave testimony confirming its truth. Id. at 835-36.
[8] The author of this article, in referring to the translator as the "translation witness," appears to have assumed that the translator would be called by the offering party to testify at the hearing.
[9] Similar language appears in Davis v. Sparks, 235 S.C. 326, 333, 111 S.E.2d 545, 549 (1959), which the Wrights cite in their appellants' brief.