**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
In The Court of Appeals

Coves Darden, LLC, Appellant,

v.

Francisco Jose Garcia Ibañez, Dori Derr, and Half Moon Stables, LLC, Respondents.

Appellate Case No. 2014-000339

———————

Appeal From Aiken County
Doyet A. Early III, Circuit Court Judge

———————

Unpublished Opinion No. 2016-UP-402
Heard December 10, 2015 – Filed August 17, 2016

———————

**AFFIRMED**

———————

M. Baron Stanton, Stanton Law Offices, P.A., of Columbia, for Appellant.

Thomas Roy Young Jr., Law Offices of Tom Young, Jr., PC, of Aiken; and James M. Derr, of Saint Thomas, U.S. Virgin Islands, for Respondents.

———————

**FEW, A.J.:**  Coves Darden, LLC appeals the circuit court's order granting summary judgment in favor of respondents Francisco Jose Garcia Ibañez,[1] Dori Derr, and Half Moon Stables, LLC as to all of Coves Darden's claims.  We affirm.

## I.      Facts and Procedural Background

Coves Darden owns and operates a horse farm in Springfield, South Carolina, in Aiken County.  In 2010, Coves Darden entered into employment negotiations with Ibañez—a renowned trainer of the type of horse Coves Darden trained at its farm.  At the time, Ibañez trained horses at an academy in Spain.  During the negotiations, Ibañez traveled to the United States several times to visit Coves Darden and discuss the possibility of moving to South Carolina to train and ride Coves Darden's horses.  Coves Darden paid for Ibañez's travel for each of those visits.  On one visit, Coves Darden orally offered Ibañez employment and discussed potential terms of an employment agreement.  After making multiple visits, Ibañez accepted the offer and began what he called "a two year sabbatical" from his employer in Spain.

Miguel Coves—a principal of Coves Darden—stated in an affidavit that as part of the agreement, Coves Darden "arranged for and paid for the application for and processing of, the nonimmigrant petition allowing Ibañez to enter the United States."  Coves Darden "paid the legal expenses pertaining to this process"—which included hiring an immigration lawyer in Miami, Florida—and "paid for Ibañez's travel expenses from Spain to the United States."  The immigration lawyer stated in an affidavit, "Coves Darden hired me to painstakingly assemble an extraordinary visa application for Ibañez.  They had me prepare the written terms of the employment to submit in support of the visa application . . . .  It was to be effective upon the visa being granted and Ibañez entering the United States."  As part of the application, Coves Darden submitted a written employment contract signed by Miguel Coves but not by Ibañez.  Ibañez received an "O-1 visa," which "allowed him to work only for Coves Darden."

After obtaining the visa, Ibañez moved to Coves Darden's farm and began working.  Approximately four months after arriving in the United States, Ibañez and Coves Darden made plans for Ibañez to enter a competition in Georgia.  On the day Ibañez was set to leave for the competition, Coves Darden discovered he had abandoned his residence and left a notice ending his employment. Coves

---

[1] The briefs refer to Francisco Jose Garcia Ibañez using different parts of his name, but we refer to him as Ibañez.

Darden soon discovered Ibañez was registered to enter a different competition for Dori Derr, an owner of Half Moon Stables—a competitor of Coves Darden.

Coves Darden filed a complaint against the respondents, asserting claims of breach contract and breach of fiduciary duty against Ibañez, tortious interference with a contract against Derr, and violations of the South Carolina Unfair Trade Practices Act against Derr and Half Moon. During discovery, the respondents sent Coves Darden an interrogatory asking for "the terms and conditions of any alleged oral agreement with . . . Ibañez with respect to the terms and conditions of his employment." Coves Darden responded, "The agreement was not oral. It was a written contract presented to and acknowledged by Ibañez in or before January of 2012, after August of 2011. It states the terms and conditions of the employment contract . . . . It may or may not have been countersigned by him." However, in response to the respondents' request for Coves Darden to "produce the fully executed employment contract," Coves Darden stated it "believes there are none currently responsive" to the request.

The respondents moved for summary judgment as to all claims, and the circuit court held three hearings on the respondents' motion. On the day of the second hearing, Coves Darden filed an amended response to the respondents' interrogatory, explaining "the parties reduced the common terms of the agreement to writing. The written document may or may not have been countersigned by Ibañez. . . . Upon information and belief, the written document was presented to and acknowledged by Ibañez in or before the time of his visa interview in February of 2012." After the third summary judgment hearing, the circuit court issued an order granting summary judgment in favor of the respondents as to all of Coves Darden's claims.

## II.    Issues on Appeal

(1)    Whether the circuit court erred in granting summary judgment in favor of Ibañez as to Coves Darden's breach of contract claim;

(2)    Whether the circuit court erred in granting summary judgment in favor of Ibañez as to Coves Darden's breach of fiduciary duty claim;

(3)    Whether the circuit court erred in granting summary judgment in favor of Derr as to Coves Darden's tortious interference with a contract claim; and

(4)     Whether the circuit court erred in granting summary judgment in favor of Derr and Half Moon as to Coves Darden's claim that Derr and Half Moon engaged in unfair or deceptive practices in violation of the South Carolina Unfair Trade Practices Act.

## III.    Breach of Contract

Coves Darden argues the circuit court erred in granting summary judgment as to its breach of contract claim against Ibañez.  Specifically, Coves Darden asserts the circuit court erred in finding there is no evidence of a written contract and the oral contract violated the statute of frauds.

Rule 56(c) of the South Carolina Rules of Civil Procedure provides the circuit court shall grant summary judgment if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  "In determining whether any triable issue of fact exists, the evidence and all inferences which can reasonably be drawn therefrom must be viewed in the light most favorable to the nonmoving party." *Quail Hill, LLC v. Cty. of Richland*, 387 S.C. 223, 235, 692 S.E.2d 499, 505 (2010) (citation omitted).  "However, it is not sufficient for a party to create an inference that is not reasonable or an issue of fact that is not genuine." *Town of Hollywood v. Floyd*, 403 S.C. 466, 477, 744 S.E.2d 161, 166 (2013).

In its summary judgment order, the circuit court considered Coves Darden's discovery responses in which it claimed the parties had a written contract, stated it could not produce a written contract signed by Ibañez, and later claimed the parties had an oral contract.  The court stated, "Regardless of which version the Court accepts, the end result is the same."  If the circuit court accepted Coves Darden's original responses, "then the Court [was] left with the conclusion that there was . . . no oral agreement between the parties, and . . . no written agreement signed by [Ibañez]."  In the alternative, if the circuit court accepted Coves Darden's amended response in which it claimed the parties had "an alleged oral agreement for employment between two and three years duration, the Court [was] again left with the fact that there [was] no writing signed by [Ibañez] and, therefore, the alleged oral agreement violates the Statute of Frauds and is unenforceable."

First, we find no evidence in the record that Ibañez entered into a written contract with Coves Darden.  The record includes a written employment agreement that Coves Darden signed and submitted with the visa application, but Ibañez did not sign the agreement.  Although a written contract may be enforceable without being

signed by both parties if the contract is accepted by the party who did not sign, *see, e.g., Peddler, Inc. v. Rikard*, 266 S.C. 28, 32, 221 S.E.2d 115, 117 (1975) ("It is not always necessary, in order to give validity to a contract, that it should be signed by both parties; it may be sufficient if it be signed by one party and accepted, held, and acted upon by the other." (citation omitted)), there is no evidence in the record that Ibañez agreed to the written contract. The only evidence connecting Ibañez to the written contract is an affidavit from an immigration lawyer stating Coves Darden "had me go over the employment agreement with Ibañez on the phone . . . and explain the limitations of the visa and the employment agreement with him. I discussed point by point each part of the employment agreement with Ibañez, as part of" Ibañez's preparation for his visa interview with U.S. authorities in Spain. The affidavit did not state Ibañez agreed to or accepted the terms of the written agreement.

Alternatively, Coves Darden claims the parties entered into an oral contract. There is evidence in the record supporting Coves Darden's claim. Miguel Coves filed an affidavit in which he stated, "We entered into an agreement to employ Ibañez to act as an expert equestrian trainer," and described the terms of the agreement. Similarly, Ibañez testified in his deposition that Coves Darden offered him employment, and he explained the same terms Miguel Coves described in his affidavit. He testified during the deposition that in January 2011—after multiple visits to South Carolina—he accepted the proposed terms:

> Q: Did you discuss any differences between the two of you over the terms that would be acceptable?
>
> A: No. We continue[d] with the same agreement.
>
> Q: Did you accept the proposed terms on that visit?
>
> A: Yes.

According to Miguel Coves's affidavit, Coves Darden did not begin the visa application process—which included reducing "common aspects of the agreement . . . to writing" to submit to immigration authorities—until after Ibañez accepted the terms of the oral agreement.

Viewing the oral agreement in the light most favorable to Coves Darden, we find the parties agreed to the following terms: Coves Darden would pay Ibañez about $8,000 per month, furnish him a house and car, provide insurance for Ibañez and

his family, assist him in obtaining a work visa, and pay for his travel to and from the United States until the visa was granted.  In addition, Ibañez agreed to work exclusively for Coves Darden during the term of the agreement.

As to the duration of the contract, Miguel Coves stated in his affidavit, "We both acknowledged and expected the relationship to continue for at least two years.  The probable expected length of the visa was three years, and his likely initial leave of absence from his prior employment relationship was to be two years."  Moreover, Ibañez testified during his deposition, "We talked about if we were able to reach an agreement that I would take a two year sabbatical.  And then depending on how things moved along, well, it could be extended or not."  Ibañez testified he accepted the offer, and Coves Darden's lawyer asked him, "So at this time, you reached an agreement in which you would work for an expected length of two years, which might possibly be extended?"  Ibañez answered, "Yes."  Viewing this and all other evidence in the light most favorable to Coves Darden, the parties' agreement as to the term of the contract was that the term would be a minimum of two years.

Coves Darden argues, however, the parties understood the term of the contract to be equal to the length of Ibañez's visa, which could have been granted for less than a year.  If the visa was granted for less than a year, Coves Darden argues, the contract would be fully performed in less than a year and therefore would not be subject to the statute of frauds.  In support of its argument, Coves Darden points the court to a supplemental interrogatory response Coves Darden filed less than a week before the third summary judgment hearing in which it stated,

> Miguel Coves may testify that the length of the initial term of the special employment contract was for whatever initial duration the O-1 visa was granted and remained in good standing.  This was agreed to be up to three years if also supported by a leave of absence from Ibañez's previous job, and could also end earlier with expiration or earlier termination of the O-1 visa . . . ; the parties also contemplated and expected, but could not be certain, that the initial term would be two or three years, based on the usual attributes of an O-1 visa, Ibañez's

leave of absence from his previous job, and the stated desires and agreement of the parties.[2]

Coves Darden also directs the court to parts of Miguel Coves's affidavit—in particular paragraph 6—which stated,

> We entered into an agreement to employ Ibañez to act as an expert equestrian trainer, and to provide expert instruction and consultancy services in the equestrian arts for clients of Coves Darden Farm. We both acknowledged and expected the relationship to continue for at least two years. The probable expected initial length of the visa was three years, and his likely initial leave of absence from his prior employment relationship was to be two years.

We find the oral contract violated the statute of frauds. The statute of frauds provides a contract that cannot be performed within one year is unenforceable unless it is in writing and signed by the party against whom enforcement of the contract is sought. *Springob v. Univ. of S.C.*, 407 S.C. 490, 495, 757 S.E.2d 384, 387 (2014) ("[T]he Statute of Frauds requires that a contract that cannot be performed within one year be in writing and signed by the parties." (alteration in original) (citation omitted)); *see also* S.C. Code Ann. § 32-3-10 (2007) ("No action shall be brought whereby . . . (5) To charge any person upon any agreement that is not to be performed within the space of one year from the making thereof; Unless the agreement upon which such action shall be brought or some memorandum or note thereof shall be in writing and signed by the party to be charged therewith . . . ."). However, "[i]f there is a possibility that a contract might be performed within one year, the statute of frauds is not a bar to enforcement of the contract." *Springob*, 407 S.C. at 495-96, 757 S.E.2d at 387.

Contrary to Coves Darden's argument, the contract would not be removed from the statute of frauds even if the visa was granted for less than one year. For a contract to be exempt from the statute of frauds, it must be possible that the contract as agreed to can be *performed* within a year. *Id.*; *see also Roberts v. Gaskins*, 327 S.C. 478, 484, 486 S.E.2d 771, 774 (Ct. App. 1997) ("It is . . . well established that the Statute of Frauds applies only to contracts which are impossible of

---

[2] The interrogatory answer is not verified. *See* Rule 33(a), SCRCP ("Each interrogatory shall be answered separately and fully in writing under oath . . . .").

performance within one year."). It is not enough that the parties realize the contract may have to be terminated early for reasons beyond their control—such as the denial of a sufficiently lengthy work visa in this case. *See* 9 WILLISTON ON CONTRACTS § 24:9 (4th ed. 2011) ("[M]ost cases . . . hold a contract to render service for more than a year to be within the intention and force of the statute [of frauds], notwithstanding one or both of the parties may have the option of ending it by notice in a year, because full performance cannot be rendered in a year consistently with the understanding of the parties." (first and second alteration in original) (footnote omitted)).

In this case, Ibañez agreed to provide services—teaching lessons, training horses, and entering competitions—for Coves Darden for a definite term of at least two years. If he received a visa for less than a year, he would have to leave the United States after completing less than one year of his two-year obligation. Although the parties understood federal immigration law may prevent Ibañez from being in the United States for two full years, the expiration of his visa in less than a year would not constitute performance of the contract consistent with the understanding of the parties. Rather, it would constitute excusable nonperformance of Ibañez's obligation because he could not complete the agreed-upon two years of service. Therefore, we find the oral contract violated the statute of frauds because it was impossible to perform in less than one year and was not in writing and signed by Ibañez.

Because we find Coves Darden and Ibañez had no written contract and no enforceable oral contract, we find they had only an agreement for employment at will. An at-will agreement is terminable by either party, and Coves Darden therefore cannot succeed on a breach of contract claim. *See Grant v. Mount Vernon Mills, Inc.*, 370 S.C. 138, 145-46, 634 S.E.2d 15, 19 (Ct. App. 2006) ("South Carolina has long recognized the doctrine of employment at-will. This doctrine allows either party to terminate the employment 'for any reason or no reason' without being subject to a claim for breach of contract, subject to narrow exceptions and prohibitions against illegal discrimination . . . ." (citations omitted)). Accordingly, we hold the circuit court properly granted summary judgment in favor of Ibañez.

## IV. Breach of Fiduciary Duties

Coves Darden argues all employees are agents of their employers and, therefore, owe fiduciary duties to their employers. Accordingly, it argues the circuit court erred in finding Ibañez owed no fiduciary duties to Coves Darden.

The circuit court found "there are no fiduciary duties of loyalty owed by a non-contractual, non-fiduciary employee subject only to the rules for common law at[-]will employment."  The court stated, "South Carolina cases finding a cause of action for breach of the duty of loyalty have all involved upper level managerial employees."  We agree with the circuit court.  We can find no South Carolina authority providing all employees are agents of their employers and owe their employers fiduciary duties.  Although it may be true that Ibañez had specialized skills and a close, familial relationship with Miguel Coves, that does not give rise to fiduciary duties.  The record contains no evidence Ibañez indicated to Coves Darden that he would put Coves Darden's interests before his own.  Rather, the record indicates only that Coves Darden unilaterally placed trust and confidence in Ibañez and that Ibañez agreed to work for Coves Darden.  The unilateral actions of an employer do not create a fiduciary duty in its employees.  *See Burwell v. S.C. Nat'l Bank*, 288 S.C. 34, 41, 340 S.E.2d 786, 790 (1986) ("The term fiduciary implies that one party is in a superior position to the other and that such a position enables him to exercise influence over one who reposes special trust and confidence in him.  As a general rule, mere respect for another's judgment or trust in his character is usually not sufficient to establish such a relationship.  The facts and circumstances must indicate that the one reposing the trust has foundation for his belief that the one giving advice or presenting arguments is acting not in his own behalf, but in the interests of the other party." (citation omitted)).  We affirm the circuit court's granting of summary judgment as to this issue.

## V.     Tortious Interference with a Contract

Coves Darden argues the circuit court erred in granting summary judgment as to its tortious interference with a contract claim because an at-will contract is still a contract and a question of fact exists as to whether Derr tortiously interfered with Coves Darden's contract with Ibañez.

To succeed on a claim of tortious interference with contract, a plaintiff must prove five elements: "(1) existence of a valid contract; (2) the wrongdoer's knowledge thereof; (3) his intentional procurement of its breach; (4) the absence of justification; and (5) resulting damages."  *Dutch Fork Dev. Grp. II, LLC v. SEL Props., LLC*, 406 S.C. 596, 604, 753 S.E.2d 840, 844 (2012).  "Where there is no breach of the contract, there can be no recovery."  *Eldeco, Inc. v. Charleston Cty. Sch. Dist.*, 372 S.C. 470, 481, 642 S.E.2d 726, 732 (2007).  In its summary judgment order, the circuit court ruled the lack of a breach of Ibañez's contract "alone is fatal to [Coves Darden]'s claim."  We agree with the circuit court.

Because we find Coves Darden cannot demonstrate a breach of contract, we find summary judgment was proper as to the tortious interference with a contract claim.

## VI. Unfair Trade Practices

Coves Darden argues the circuit court erred in granting summary judgment as to its claim that Derr and Half Moon violated the Unfair Trade Practices Act. Coves Darden primarily contends Derr's alleged tortious interference with a contract was itself an unfair or deceptive trade practice. Therefore, because it argues the circuit court erred in granting summary judgment as to the tortious interference claim, it argues the circuit court also erred in granting summary judgment as to the unfair trade practices claim. Coves Darden also asserts advertising displayed by Half Moon was misleading because it "does not convey the truth that Ibañez'[s] presence in the United States was procured over several years at great expense for a very large purpose by Coves Darden."

A plaintiff must prove the following elements to recover on an unfair trade practices claim: "(1) the defendant engaged in an unfair or deceptive act in the conduct of trade or commerce; (2) the unfair or deceptive act affected [the] public interest; and (3) the plaintiff suffered monetary or property loss as a result of the defendant's unfair or deceptive act(s)." *Health Promotion Specialists, LLC v. S.C. Bd. of Dentistry*, 403 S.C. 623, 638, 743 S.E.2d 808, 816 (2013) (alteration in original) (citation omitted).

In its complaint, Coves Darden claimed Derr and Half Moon made two allegedly deceptive statements in their advertising: "Derr falsely advertised [Ibañez's] purpose for being in the United States and working for her as his being 'on an extended teaching sabbatical,' 'based at Half Moon Stables.'" However, in its memorandum opposing summary judgment, Coves Darden conceded the statements were "technically true." The circuit court found Coves Darden could not prove the first element—a deceptive act—because Half Moon's advertising statements were "technically true," and it could not prove the third element—the deceptive act affected the public interest—because it offered only "vague, unsubstantiated claims that any member of the public was deceived by hearing admittedly true statements."

We find the circuit court properly granted summary judgment. First, as the circuit court noted, Ibañez was in the United States on a two-year teaching sabbatical and was based at Half Moon at the time of the advertisements. Therefore, the statements in Half Moon's advertising were true, and Derr and Half Moon did not

engage in a deceptive act.  Second, Coves Darden argues the advertising was deceptive because it did not disclose to the public that Ibañez originally came to the United States to work for Coves Darden, not Half Moon.  However, Coves Darden has offered no evidence to explain how that information affects any member of the public.  Accordingly, we affirm the granting of summary judgment as to this issue.

## VII.   Conclusion

The circuit court's granting of summary judgment in favor of the respondents is **AFFIRMED.**

**LOCKEMY, C.J., concurs.**

**KONDUROS, J., concurring in part and dissenting in part:**  I agree with the majority's decision to affirm the circuit court's grant of summary judgment on the fiduciary duty and unfair trade practices causes of action.  However, I respectfully disagree with the majority as to the issues of breach of contract and tortious interference of a contract.

## I.      Interrogatory Response

Initially, I agree with Coves Darden's contention the circuit court erred in it treatment of Coves's interrogatory answer as an admission.[3]  Coves Darden contends the circuit court erred in applying the wrong standard for a summary judgment decision by disregarding contradictory evidence, considering an unsworn interrogatory response to be a judicial admission, and considering an unsworn interrogatory response to be an affidavit rendering a subsequent affidavit a sham.

"In determining the sufficiency of responses to interrogatories, each answer must be read in the light of the question asked.  Absent any specification, the interrogatory should be construed as seeking current information as of the time the question is asked and answered." *Baughman v. Am. Tel. & Tel. Co.*, 306 S.C. 101, 108, 410 S.E.2d 537, 541 (1991) (citations omitted). A request for admissions is governed by a different rule than interrogatories.  *See* Rules 33 & 36, SCRCP;

---

[3] Despite this decision, the circuit court made alternate findings as to the validity of an oral contract.  Presumably, the majority does not directly address this issue because of those alternate findings.

*Scott v. Greenville Hous. Auth.*, 353 S.C. 639, 648, 579 S.E.2d 151, 155-56 (Ct. App. 2003).

In *Wright v. Hiester Construction Co.*, 389 S.C. 504, 518, 698 S.E.2d 822, 829 (Ct. App. 2010), the appellants contended the trial court should have found the opposing party liable as a matter of law in part because of written admissions made during discovery. This court determined: "The written admission during discovery was in response to interrogatories, rather than a request to admit. As such, it was correctly construed by the trial judge 'as seeking current information as of the time the question is asked and answered.'" *Id.* at 519, 698 S.E.2d at 830 (quoting *Baughman*, 306 S.C. at 108, 410 S.E.2d at 541).

This court also rejected the appellants' argument "the admissions made on behalf of [the opposing party] either by [its owner] or [its] counsel amount to judicial admissions that estop [the party] from denying liability." *Id.* The court noted: "Judicial estoppel comes into play when the court is forced to take a position based on a factual assertion." *Id.* (quoting *Hawkins v. Bruno Yacht Sales, Inc.*, 353 S.C. 31, 43, 577 S.E.2d 202, 208 (2003)). The court determined, "In the present case, no court has taken a prior position regarding the [liability]; therefore, judicial estoppel is not applicable." *Id.*

Separate rules of civil procedure govern requests for admissions and interrogatories. The rule on admissions specifically provides that any matter admitted under the rule is "conclusively established unless the court on motion permits withdrawal or amendment of the admission." Rule 36(d), SCRCP. The rule on interrogatories has no such language. *See* Rule 33, SCRCP. Therefore, the circuit court erred in considering Coves's response to interrogatories—that the contract was written—as an admission that there could be no oral contract. Coves believed Garcia and Coves Darden had a written contract because Coves had signed the contract. However, this does not exclude the possibility of an oral contract if the written contract he relied on was not valid. Further, I believe the interrogatory answer was not a judicial admission because no court had taken a prior position. *See Wright*, 389 S.C. at 519, 698 S.E.2d at 830 ("In the present case, no court has taken a prior position regarding [this issue]; therefore, judicial estoppel is not applicable."). Accordingly, I would find the circuit court erred in relying on Coves's response as a ground for granting summary judgment and concluding no oral contract existed.

## II.     Existence of Employment Contract

Additionally, I believe the circuit court erred in determining at the summary judgment stage any oral agreement violated the statute of frauds and any written contract was not signed by Francisco Jose Garcia Ibañez.[4]

### A. Statute of Frauds

"'[T]he Statute of Frauds requires that a contract that cannot be performed within one year be in writing and signed by the parties.'  If there is a possibility that a contract might be performed within one year, the statute of frauds is not a bar to enforcement of the contract."  *Springob v. Univ. of S.C.*, 407 S.C. 490, 495-96, 757 S.E.2d 384, 387 (2014) (quoting *Davis v. Greenwood Sch. Dist. 50*, 365 S.C. 629, 634, 620 S.E.2d 65, 67 (2005)).  Therefore, "[t]o satisfy the Statute of Frauds, every essential element of the contract must be expressed in a writing signed by the party to be compelled."  *Fici v. Koon*, 372 S.C. 341, 346, 642 S.E.2d 602, 604 (2007)).  "The burden of proof is on the party seeking to enforce the contract."  *Id.*  "The elements required to satisfy the statute of frauds in order to have a valid employment contract are: (a) compensation; (b) determinable duration (an initial starting date and date of termination); (c) reciprocal rights, duties, and obligations; and (d) a written instrument if contract not to be performed within one year."  *Young v. Indep. Pub. Co.*, 273 S.C. 107, 110, 254 S.E.2d 681, 682 (1979).

> [T]he Statute of Frauds applies only to contracts which are impossible of performance within one year.  A contract having *a contingency which may occur within the year* need not be supported by a written document.  If there is a *possibility* of performance within a year, the contract is not barred by the Statute of Frauds.  The fact that performance within a year is highly improbable or *not expected* by the parties does not bring a contract within the scope of this clause.

*Roberts v. Gaskins*, 327 S.C. 478, 484, 486 S.E.2d 771, 774 (Ct. App. 1997) (emphases added) (citations omitted).

> [When] there is a contingency expressed upon the face of the contract, or implied from the circumstances, upon the happening of which within a year the contract or

---

[2] We refer to him as Garcia because his counsel indicates that is the proper way to refer to him.

> agreement will be performed, the contract is not within
> the statute, though it be clear that it cannot be performed
> within a year except in the event the contingency happens
> . . . . If the contingency is such that its happening may
> bring the performance within a year, the contract is not
> within the terms of the statute; and this is true whether
> the parties at the time had in mind the happening of the
> contingency or not. *The existence of the contingency* in
> this class of cases, and not the fact that the parties may or
> may not have contemplated its happening, is what
> prevents the agreement from coming within the scope of
> the statute.

*Id.* at 484-85, 486 S.E.2d at 774 (emphasis added) (omission by court) (quoting *Warner v. Texas & P. Ry. Co.*, 164 U.S. 418, 432-33 (1896)).

"The question is not what that probable, or expected, or actual performance of the contract was, but whether the contract, according to the reasonable interpretation of its terms, *required* that it should not be performed within the year." *Warner*, 164 U.S. at 434 (emphasis added); *see also Tonkoff v. Roche Fruit & Produce Co.*, 242 P. 3, 6 (Wash. 1926) ("The true test is, not what the parties expected or what actually happened, but whether the contract by its terms *must* endure longer than the year." (emphasis added)). "Where under the terms of an oral agreement an employment is to cease on a contingency which may happen within a year, the oral agreement is not within the statute of frauds." 37 C.J.S. *Frauds, Statute of* § 52 (2008). If contingencies that could occur within one year "are express or implied-in-fact terms of a contract," "the full performance contemplated by the contract could have been rendered within one year of the contract's making." *McKinney v. Nat'l Dairy Council*, 491 F. Supp. 1108, 1114 (D. Mass. 1980).

I differ from the majority in that I view the condition the contract only lasts as long as the visa as a contingency. The majority views it as something that would excuse performance. In *Street v. Maddux, Marshall, Moss & Mallory, Inc.*, 24 F.2d 617 (D.C. Cir. 1928), an oral lease agreement provided "it should immediately cease and be of no force or effect if the plaintiff sold the real estate prior to the expiration of the three-year period." *Id.* The court found:

> That provision of the agreement, however, contemplated
> the annulment, not the performance, of the contract. The
> annulment of an agreement necessarily implies that the

parties thereto are relieved from performing the
unperformed obligations of the contract. Performance,
on the other hand, means compliance with the obligations
of the contract and the fulfillment thereof. It follows,
therefore, that the annulment of a contract and its
performance are distinctly different conceptions, and
that, although the parol contract in issue might be
annulled within a year, it was none the less a contract, the
performance of which required three years.

*Id.* at 618-19.

I would find the contract could be performed in a year. The letter from Coves to Homeland Security in support of the visa application stated Coves Darden "will employ Mr. Garcia . . . for a term of three (3) years, *or for such period as is authorized by [USCIS]*." (emphasis added). The letter also states Coves Darden "has informed Mr. Garcia . . . of the temporary nature of this employment, and Mr. Garcia . . . has accepted this condition. [Coves Darden] will not employ [Garcia] beyond his authorized period of stay." The visa could have been issued for less than one year, and if it had, Coves Darden would have employed Garcia for less than a year. I believe this is different from an excusable nonperformance or termination of the contract like that described in *Street*. Unlike the majority, I believe the term of the visa was a contingency contemplated by the contract, not that it would prevent the contract from being fully performed if it were to occur. Here, the contract did not provide it would no longer be in force or effect if the visa was only provided for less than one year; it specified that the employment would only last as long as the visa term. Garcia would still perform the responsibilities in the agreement, just for a shorter period of time than hoped for by the parties. Accordingly, the contract could have been performed in less than one year and thus is not barred by the statute of frauds. *See Weber v. Perry*, 201 S.C. 8, 11, 21 S.E.2d 193, 194 (1942) ("Where under the terms of an oral agreement an employment is to cease upon a contingency which may happen within a year, the oral agreement is not within the statute of frauds." (quoting 27 C.J. 188)). Therefore, I believe the circuit court erred in granting summary judgment on the breach of contract cause of action.

### B. Written Contract

"[W]hen a contract signed by one party only is accepted by the other party, it becomes binding upon both just as if it were signed by both." *Jaffe v. Gibbons*,

290 S.C. 468, 473, 351 S.E.2d 343, 346 (Ct. App. 1986). "A contract does not always require the signature of both parties; it may be sufficient, if signed by one and accepted and acted on by the other." *Id.*

In *Peddler, Inc. v. Rikard*, 266 S.C. 28, 31, 221 S.E.2d 115, 117 (1975), the supreme court concluded "the concurrent findings of fact by the Master and the trial judge that James C. Rikard entered into a contract with the respondent for the purchase of a 'Peddler' franchise to operate a restaurant at Santee, South Carolina, has evidentiary support." In that case, "[t]he appellant James C. Rikard contend[ed] that the franchise agreement was never signed by him, so there was no meeting of the minds and hence there was no contract between the parties as to the franchise and royalty fees." *Id.* The court determined, "It is not always necessary, in order to give validity to a contract, that it should be signed by both parties; it may be sufficient if it be signed by one party and accepted, held, and acted upon by the other." *Id.* at 32, 221 S.E.2d at 117 (quoting *Gladden v. Keistler*, 141 S.C. 524, 140 S.E. 161 (1927)).

> [T]he fact that one of the parties has signed the contract does not require that the other party should do likewise. A written contract, *not required to be in writing*, is valid if one of the parties signs it and the other acquiesces therein. Acceptance of a contract by assenting to its terms, holding it and acting upon it, may be equivalent to a formal execution by one who did not sign it. . . . If a person accepts and adopts a written contract, even though it is not signed by him, he is deemed to have assented to its terms and conditions and to be bound by them.

*Id.* (ellipsis by court) (emphasis added) (quoting 6 R.C.L. at page 641).

Although there is some written documentation of the contract including the agreement submitted to USCIS, Coves Darden has provided nothing signed by Garcia. Coves Darden suggests the contract does not have to be signed by the parties to be valid and has provided case law supporting that assertion. Notably, none of the cases in which a contract does not have to be signed are situations in which the statute of frauds may apply. *See id.* ("A written contract, *not required to be in writing*, is valid if one of the parties signs it and the other acquiesces therein." (emphasis added) (quoting 6 R.C.L. at page 641)). However, because I would have found the contract could be performed in less than a year, I would also find the statute of frauds does not require the contract to be in writing.

Accordingly, I believe the contract could be enforced if Coves signed it and Garcia acquiesced. The record contains some evidence Garcia assented in that he moved from Spain, lived in a house and used a car both provided by Coves Darden, and performed in a competition on behalf of Coves Darden. *See id.* ("A written contract, *not required to be in writing*, is valid if one of the parties signs it and the other acquiesces therein. Acceptance of a contract by assenting to its terms, holding it and acting upon it, may be equivalent to a formal execution by one who did not sign it. . . . If a person accepts and adopts a written contract, even though it is not signed by him, he is deemed to have assented to its terms and conditions and to be bound by them." (quoting 6 R.C.L. at page 641)). Additionally, Garcia testified he had an agreement with Coves Darden, and he acted on it by moving to South Carolina, working at Coves Darden, and competing on its behalf. *See Jaffe*, 290 S.C. at 473, 351 S.E.2d at 346 ("A contract does not always require the signature of both parties; it may be sufficient, if signed by one and accepted and acted on by the other."). Accordingly, I would find the circuit court erred in granting summary judgment on the breach of contract cause of action by finding there was no written contract and the issue should have been submitted to the jury.[5]

---

[5] Respondents argue Coves Darden asserts for the first time on appeal there is some possibility of performance of the employment agreement within a year. Because I would reverse this issue on the merits, I believe I need to express that I would find the argument is preserved. The possibility of performance in a year due to the USCIS granting the visa for less than one year was raised to the circuit court in Coves Darden's opposition to Respondents' statute of frauds argument. The proceedings before the circuit court were less than clear in terms of the summary judgment motion. Coves Darden raised this exception as soon as it became aware Respondents were asserting an oral contract would violate the statute of frauds. Respondents did not raise the statute of frauds in their first or second motion for summary judgment or the memorandum referenced in the motions. The circuit court first raised the statute of frauds at the second summary judgment hearing; it had not been raised at the prior hearing. Coves Darden responded that Respondents had not pled the statute of frauds, which is an affirmative defense, and also that "there are exceptions to the statute of frauds." It further stated "there are a number of exceptions, and one is, that the statute of frauds only applies if it was impossible, impossible to perform this agreement within the space of one year. . . . [I]f [USCIS] revoked the visa for any reason, then obviously they could not continue to employ him. So all of that was built into the agreement." Coves Darden also filed a document in opposition to the statute of frauds argument asserting the same. Based on this, I would find Coves Darden's argument the

## III.   Tortious Interference with a Contract

Finally, I believe circuit court erred in determining (1) because there was no contract, there could be no tortious interference with a contract cause of action; (2) there was no inducement; and (3) such activities were fair competition.

"The elements of a cause of action for tortious interference with contract are: (1) existence of a valid contract; (2) the wrongdoer's knowledge thereof; (3) his intentional procurement of its breach; (4) the absence of justification; and (5) resulting damages." *Dutch Fork Dev. Grp. II, LLC v. SEL Props., LLC*, 406 S.C. 596, 604, 753 S.E.2d 840, 844 (2012) (quoting *Camp v. Springs Mortg. Corp.*, 310 S.C. 514, 517, 426 S.E.2d 304, 305 (1993)).  "[A]n action for tortious interference protects the property rights of the parties to a contract against unlawful interference by third parties." *Id.* (alteration by court) (quoting *Threlkeld v. Christoph*, 280 S.C. 225, 227, 312 S.E.2d 14, 15 (Ct. App. 1984)).  "An essential element to the cause of action for tortious interference with contractual relations requires the intentional procurement of the contract's breach.  Where there is no breach of the contract, there can be no recovery." *Eldeco, Inc. v. Charleston Cty. Sch. Dist.*, 372 S.C. 470, 481, 642 S.E.2d 726, 732 (2007) (citation omitted).

The circuit court based its decision to grant summary judgment on this cause of action based on the lack of an enforceable contract.  Because I would find the circuit court erred in granting summary judgment on the existence of the contract, I believe summary judgment should be reversed on this cause of action as well.

---

contract could be performed in one year, thus removing it from the statute of frauds, is preserved.

Respondents also assert Coves Darden argues for the first time on appeal two other exceptions apply: (1) there has been partial performance by the party to be charged and (2) there is independent consideration to support the agreement.  As to Coves Darden's assertion of partial performance, I believe Respondents are correct this was not raised to the circuit court and is unpreserved for review on appeal.  As to Respondents' assertion the argument there is independent consideration to support the agreement is unpreserved, I do not see any argument advanced on appeal on this basis by Coves Darden.

The circuit court also found Coves Darden had not presented any reasonable evidence Derr intentionally procured the breach. Derr testified at her deposition she had asked Garcia if he had a contract with Coves Darden. She indicated Garcia told her he had asked for a copy of the contract from Coves but Coves would not provide it to Garcia. She stated Garcia indicated the only time he saw a contract was when Coves waved it in his face and told him the contract prohibited him from speaking to competitors, which was after Coves had seen Garcia at Half Moon. Derr further testified Half Moon would not hire Garcia unless it could obtain a visa for him. She indicated Half Moon could not have hired or paid him until his visa was approved. Although Derr never saw a written contract between Coves Darden and Garcia, her testimony indicates she had some knowledge Coves Darden and Garcia believed that one existed. Further, Coves indicated in his affidavit that due to the short amount of time between Garcia leaving the employment of Coves Darden and entering competitions on Half Moon's behalf, the negotiations must have started while Garcia was still working for Coves Darden. Accordingly, I believe a question of fact exists as to whether Derr intentionally procured the breach.

The circuit court also found a privilege exists for those who offer employment to at-will employees of their competitors. However, because an issue exists as to whether Coves Darden and Garcia an employment contract, not just an at-will relationship, this privilege does not apply. Accordingly, I would reverse the grant of summary judgment on this cause of action.[6]

---

[6] Coves Darden also asserts the circuit court erred in granting summary judgment on this cause of action because a third party cannot assert the statute of frauds as a defense. *See Bocook Outdoor Media, Inc. v. Summey Outdoor Advert., Inc.*, 294 S.C. 169, 177, 363 S.E.2d 390, 394 (Ct. App. 1987) (holding a stranger to an agreement cannot assert the statute of frauds), *overruled on other grounds by O'Neal v. Bowles*, 314 S.C. 525, 431 S.E.2d 555 (1993); *Hatcher v. Harleysville Mut. Ins. Co.*, 266 S.C. 548, 553, 225 S.E.2d 181, 183 (1976) ("[T]he protection afforded by the statute of frauds is a personal privilege of the parties to the agreement, and a stranger to an oral contract cannot avail himself of the fact that the statute of frauds renders the contract unenforceable." (citation omitted)). Because I believe the circuit erred in granting summary judgment on this cause of action because there was not contract, I would not reach this argument. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not review remaining issues when its determination of a prior issue is dispositive of the appeal).

## IV.  Conclusion

I would find the circuit court erred in construing Coves's interrogatory as an admission and granting summary judgment to Respondents on the breach of contract and tortious interference with a contract cause of action.  I agree with the majority the circuit court properly granted Respondents' motion for summary judgment on the breach of fiduciary duty and unfair trade practices causes of action.[7]

---

[7] I would note Coves Darden made no argument to the circuit court or this court Respondents should be equitably estopped from asserting the statute of frauds.  *See Player v. Chandler*, 299 S.C. 101, 106, 382 S.E.2d 891, 894 (1989) ("In order to overcome statutory requirements that an agreement be in writing, the party asserting [equitable] estoppel must show that he suffered a definite, substantial, detrimental change of position in reliance on such agreement and that no remedy except enforcement of the bargain is adequate to restore his former position.").